UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW JONES,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>MARTIN GAMBOA, Warden,<br><br>　　　　Respondent. | Case No. 22-cv-05823-AMO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner Andrew Jones, a state prisoner currently incarcerated at Avenal State Prison, brings the instant *pro se* habeas action under 28 U.S.C. § 2254 to challenge his 2019 conviction and sentence in the Monterey County Superior Court involving three counts of assault on a peace officer with a firearm.

Having read and considered the papers filed in connection with this matter and now being fully informed, the Court hereby **DENIES** the petition for the reasons set forth below.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Because Jones's judgment arises from a no-contest plea in the Monterey County Superior Court, the factual record is limited. The California Court of Appeal summarized the facts of Jones's offense and the procedural background as follows:

> ### A.   *Factual Summary*
>
> We take the facts from the preliminary hearing transcript.
>
> At approximately 9:00 p.m. on December 17, 2017, police officers were dispatched to an apartment complex in the City of Monterey where defendant lived with his parents. Defendant's father had called 9-1-1 because defendant was intoxicated, armed, and suicidal. Responding officers were informed that there was an intoxicated and suicidal subject – defendant – who was armed with a knife and possibly a firearm. Defendant's mother told one of the responding officers that defendant had been diagnosed with manic depression, bipolar disorder, attention deficit disorder, and post-traumatic stress

disorder and had previously attempted suicide.

Other responding officers remained outside the apartment complex, searching for defendant. Defendant shot in the direction of three police officers from atop a nearby berm. Officers returned fire. Defendant shot two or three more times. When the gunfire stopped, officers approached defendant, who had been injured. After being arrested, defendant apologized to the officers and said he wanted to die, not to harm them.

### *B.  Procedural History*

The Monterey County District Attorney charged defendant with three counts of premeditated attempted murder of a peace officer (Pen. Code, §§ 187/664, subd. (f)[FN 1]; counts 1-3), three counts of possession of a firearm by a person previously convicted of a specified felony (§ 29800, subd. (a)(1); counts 4-6), one count of possession of ammunition by a person previously convicted of a specified offense (§ 30305, subd. (a)(1); count 7), and three counts of assault with a firearm on a peace officer (§ 245, subd. (d)(1); counts 8-10). The first amended information further alleged that defendant personally used a firearm in the commission of counts 1 through 3 (§ 12022.5, subd. (a)) and in the commission of counts 8 through 10 (§ 12022.53, subd. (b)), as well as that he had suffered a prior strike conviction (§§ 667, subd. (d), 1170.12, subd. (c)(1)).

[FN 1:] All further statutory references are to the Penal Code unless otherwise indicated.

On January 9, 2019, defendant pleaded no contest to three counts of assault with a firearm on a peace officer and admitted the associated firearm enhancement allegations in exchange for the dismissal of the other charges, enhancement allegations, and the strike allegation. The agreement provided that defendant would be sentenced to no more than 26 years eight months in prison and included two appellate waivers.

On February 27, 2019, the trial court imposed a 26 year eight month prison sentence: 16 years on count 8 (the middle term of six years plus a consecutive 10 years term on the firearm enhancement), a consecutive five years four months on count 9 (one-third the middle term of six years plus one-third the 10-year term for the firearm enhancement), and a consecutive five years four months on count 10 (one-third the middle term of six years plus one-third the 10-year term for the firearm enhancement). The court also imposed a $300 restitution fine (§ 1202.4, subd. (b)) with an additional $300 parole revocation fine, which was suspended pending successful completion of parole (§ 1202.45); a $120 court operations assessment (§ 1465.8, subd. (a)(1)), and a $90 court facilities assessment (Govt. Code, § 70373). Finally, on the prosecution's motion, the court dismissed the remaining charges and allegations against defendant (§ 1385). Defendant timely appealed.

*People v. Jones*, No. H046820, 2021 WL 2154614, *1-2 (Cal. Ct. App. May 27, 2021).

The Court presumes that summary to be correct. *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

## II.   STATE COURT APPEAL PROCEEDINGS

In 2021, the California Court of Appeal dismissed Jones's direct appeal upon finding that Jones had waived his right to appeal pursuant to his plea agreement (which is an issue he is challenging in this matter). *See* Resp't Ex. E; *see* CT 159[1] (waivers). On June 9, 2021, the state appellate court denied Jones's petition for rehearing. *See* Dkt. 1 at 12.[2] On August 11, 2021, the California Supreme Court denied review. *See* Resp't Ex. G. Nowhere in the record does it show that Jones pursued collateral review in state court.

Specifically, Jones challenged his sentence on several grounds on direct appeal. *See People v. Jones*, 2021 WL 2154614, at *1-4. The state appellate court summarized and addressed the arguments relating to whether he had waived his right to appeal such matters, stating as follows:

> On appeal, defendant contends the trial court abused its discretion and violated his due process rights by declining to strike the firearm enhancements and by imposing consecutive sentences. He further argues that the trial court violated the state and federal constitutional prohibitions on excessive fines by imposing the restitution fine, court operations assessment fee, and court facilities assessment fee without first determining his ability to pay them. Finally, defendant asserts that his trial counsel rendered constitutionally ineffective assistance by failing to object to the fines and fees based on *[People v.] Dueñas*, [30 Cal. App. 5th 1157 (2019)]. The Attorney General urges us to dismiss the appeal based on defendant's waiver of his appellate rights in his plea agreement. For the reasons set forth below, we agree that defendant's claims of error fall within the scope of his appellate waiver.
>
> *A.   Legal Principles*
>
> "'A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.]' [Citation.] Likewise, '[b]ecause waivers of appellate rights are

---

[1] The Court refers to the numbers at the bottom center of the Clerk's Transcript ("CT") pages, which is similar to how it is cited by the parties. *See* Resp't Ex. A, Dkt. 7-1.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

3

ordinarily found in the context of a plea bargain, the scope of the waiver is approached like a question of contract interpretation – to what did the parties expressly or by reasonable implication agree? [Citations.]' [Citation.]" (*People v. Becerra*, 32 Cal. App. 5th 178, 188-189 (2019).) " ' "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." [Citations.] "Such intent is to be inferred, if possible, solely from the written provisions of the contract." [Citations.] "If contractual language is clear and explicit, it governs." [Citation.]' [Citation.] We strive to 'give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable.' [Citation.]" (*United Farmers Agents Assn., Inc. v. Farmers* Group, Inc. 32 Cal. App. 5th 478, 495 (2019).) A contract is ambiguous if it is susceptible to multiple different reasonable interpretations. (*Horath v. Hess*, 225 Cal. App. 4th 456, 464 (2014).) Ambiguities in plea agreements "are construed in favor of the defendant." (*People v. Toscano*, 124 Cal. App. 4th 340, 345 (2004).)

### B.     Factual Background

The plea agreement appears on a preprinted form. The form includes a section entitled "Specified Waivers," which sets forth five waivers. Each waiver appears in a numbered paragraph and is accompanied by a blank space for defendant to initial. A portion of the agreement entitled "Defendant's Statement" provides, "I have. . . initialed each of the items that applies to my case. . . . By putting my initials next to the items in this form, I am indicating that I understand and agree with what is stated in each item that I have initialed."

Defendant initialed beside two appellate waivers. The first appellate waiver defendant initialed, which is broader, appears in paragraph No. 14 and states: "(Appeal and Plea Withdrawal Waiver) I hereby waive and give up all rights regarding state and federal writs and appeals. This includes, but is not limited to, the right to appeal my conviction, the judgment, and any other orders previously issued by this court. I agree not to file any collateral attacks on my conviction or sentence at any time in the future. I further agree not to ask the Court to withdraw my plea for any reason after it is entered." Defendant also initialed beside a second, more limited, appellate waiver, which appears in paragraph No. 15 and states: "I hereby waive and give up all rights to appeal, writ, litigate, challenge or contest in the future any order issued by this court made before the date indicated next to my signature below. I give up the same rights concerning all contents of this waiver of rights form and conditions of my entry of plea and conviction as stated herein. I further agree not to ask the court to withdraw my plea for any reason after it is entered." It is undisputed that defendant's claims of sentencing error fall within the scope of the broader appellate waiver in paragraph No. 14 but are outside the scope of the more limited appellate waiver in paragraph No. 15.

### C.     Analysis

Defendant contends that the appellate waivers in paragraph Nos. 14

4

> and 15 are inconsistent, rendering the plea agreement ambiguous. Because ambiguities in plea agreements are construed in favor of the defendant, he maintains that we should decline to enforce the broader appellate waiver in paragraph No. 14 and reach the merits of his sentencing challenges. For the reasons set forth below, we disagree that the plea agreement is ambiguous and decline to write paragraph No. 14 out of the agreement.
>
> Paragraph No. 14 includes a waiver of the right to appeal the sentence; paragraph No. 15 does not. Aside from that distinction, the two appellate waiver provisions are similar; both include a waiver of the right to appeal prior orders, a waiver of the right to appeal the conviction, and an agreement not to ask the court to withdraw the plea after it is entered. In short, the provisions overlap and the inclusion of both in a single agreement entails a certain degree of redundancy. While we strive to avoid such redundancies, neither party proposes a reading of the agreement under which paragraph No. 15 is not superfluous. But that superfluity does not justify reading paragraph No. 14 out of the plea agreement, as defendant would have us do. "The principle that contracts should be interpreted to avoid rendering language superfluous or redundant is not absolute; rather, it is a preference to be employed to the extent possible given the range of reasonable meanings that can be ascribed to the contractual language. [Citation.]" (11 Williston on Contracts (4th ed. 2021) § 32:1.) Here, avoiding redundancy is not possible. But the existence of superfluity does not render the agreement or any part thereof unenforceable. Indeed, it is not unusual for standard form agreements, such as the one at issue here, to "include overlapping or redundant or meaningless provisions." (Rest.2d Contracts § 203, comment b.) In short, we conclude that the plea agreement is unambiguous. Defendant clearly waived his right to appeal his sentence in paragraph No. 14. That waiver extends defendant's challenges to the fines and fees, which were imposed as part of his sentence.

*People v. Jones*, 2021 WL 2154614, at *2-4 (brackets added).

### III.   FEDERAL COURT PROCEEDINGS

On October 7, 2022, Jones filed the instant federal habeas petition. Dkt. 1. The Honorable Jacqueline Scott Corley handled this case before it was reassigned to the undersigned judge. In the October 24, 2022 Order to Show Cause, Judge Corley determined that Jones submitted three claims as part of his federal habeas petition, stating as follows:

> Petitioner makes the following claims: (1) the California Court of Appeal violated his right to due process by erroneously finding that he had waived his right to appeal his sentence; (2) the trial court violated his right to due process by arbitrarily denying his motion to strike a sentence enhancement; and (3) the state appellate courts violated his right to due process and equal protection by ignoring applicable law in finding that he had waived his right to appeal his sentence. The first and third claims are not distinct claims. Rather, they appear to assert alternative arguments supporting the claim that

5

> the state courts violated his constitutional rights in finding his appellate rights waived. So construed, the first and third claims present one cognizable claim for habeas relief, and the second claim presents a second cognizable claim for habeas relief.

Dkt. 3 at 2.

## IV. LEGAL STANDARD

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The Court may entertain such a writ petition "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may not grant a petition challenging a state conviction on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "[C]learly established" federal law consists of the holdings of the United States Supreme Court that existed at the time the petitioner's state court conviction became final. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Harrington v. Richter*, 562 U.S. 86, 102 (2011). A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-

United States District Court
Northern District of California

court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). In applying the above standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011).

Here, Jones presented all his claims to the California Supreme Court in the petition for review, and the state supreme court summarily denied review. *See* Resp't Ex. G. As noted above, the state appellate court did not address the merits of the claims on direct appeal because it dismissed Jones's direct appeal upon finding that he had waived his right to appeal pursuant to his plea agreement. *See* Resp't Ex. E; *see* CT 159. The Ninth Circuit has found exhaustion where the state's highest court has denied an application to allow the claims to proceed despite a lower court's refusal to hear them on the merits on procedural grounds, when the claims were included with the request for discretionary review, which is the case here. *Insyxiengmay v. Morgan*, 403 F.3d 657, 668-69 (9th Cir. 2005) (finding that claims were fully and fairly presented to Washington Supreme Court in motion for discretionary review when the claims were presented in an appendix to motion papers addressing lower court's dismissal on timeliness grounds, despite Washington rule that prohibits incorporation of issues by reference); *Scott v. Schriro*, 567 F.3d 573, 582-83 (9th Cir. 2009) (petitioner's inclusion of copy of amended petition for postconviction relief he unsuccessfully sought to file in lower court in petition for review to Arizona Supreme Court constitutes full and fair presentation). As such, Jones's claims may be reviewed independently by this Court to determine whether the state supreme court's decision to deny review was an objectively unreasonable application of clearly established federal law. *Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Cir. 2006) ("Because there is no reasoned state court

decision denying this claim, we 'perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.'") (citation omitted); *see Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) ("Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

If constitutional error is found, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

## V. DISCUSSION

As mentioned above, the Court construes Claims One and Three as one claim in which Jones alleges that the state courts violated his constitutional rights by finding his appellate rights waived. *See* Dkt. 1 at 5, 12-22. In Claim Two, because Jones believes the appellate waiver should have been found void, Jones argues that his conviction and subsequent sentence are both unlawful because the trial court violated his right to due process by arbitrarily denying his motion to strike a sentence enhancement. *See id.* at 22-33.

### A. Claims One and Three

In his petition, Jones contends the state courts violated his constitutional rights by erroneously finding his appellate rights were waived. *See* Dkt. 1 at 5, 12-22. He specifically claims that two paragraphs governing the waiver are inconsistent, which therefore renders the plea agreement ambiguous, stating as follows:

> As part of his plea agreement for a prison sentence to not exceed 26 years, 8 months, appellant signed a "Limited Waiver for Non-Stipulated Sentence" that waived rights to appeal any order issued "before" he signed the plea agreement. (CT 159[.]) As part of that agreement, appellant also signed an "Appeal and Plea Withdrawal Waiver" which did not limit its application to such prior orders. (CT 159[.])
>
> Since [his] plea agreement includes inconsistent limitations on his right to appeal, only the less restrictive limitation may be enforced.

8

Dkt. 1 at 12 (brackets added). Jones points out "[s]ince the [aforementioned] ambiguity concerns the terms of a plea agreement, it must be resolved in [his] favor, which means only the Limited Waiver is enforceable; the Unlimited Waiver is not." *Id.* at 15 (citing *People v. Toscano*, 124 Cal. App. 4th 340, 344 (2004)). As outlined above, the state appellate court determined that the challenged waiver in Jones's plea agreement was enforceable. Before reaching the merits of Jones's claim, this Court must first determine if the state appellate court was reasonable in finding that the waiver was enforceable.

Prior to entering his plea, Jones executed a "Waiver of Rights Plea of Guilty/No Contest" form. CT 158. Jones initialed, *inter alia*, the box next to paragraph 14, which reads:

> 14. **(Appeal and Plea Withdrawal Waiver)** *I hereby waive and give up all rights regarding state and federal writs and appeals.* This includes, but is not limited to, the right to appeal my conviction, the judgment, and any other orders previously issued by this court. *I agree not to file any collateral attacks on my conviction or sentence at any time in the future.* I further agree not to ask the Court to withdraw my plea for any reason after it is entered.

CT 159 (italics added). Jones also initialed the box next to paragraph 15, which reads:

> 15. **(Limited Waiver for Non-Stipulated Sentence)** *I hereby waive and give up all rights to appeal, writ, litigate, challenge or contest in the future any order issued by this court made before the date indicated next to my signature below.* I give up the same rights concerning all contents of this waiver of rights form and conditions of my entry of plea and conviction as stated herein. I further agree not to ask the court to withdraw my plea for any reason after it is entered.

CT 159 (italics added). Jones noted on the form that he had read, or had read to him, the plea form, stating as follows: "I have initialed each of the items that applies to my case. I have discussed each item with my attorney. By putting my initials next to the items on this form, I am indicating that I understand and agree with what is stated each item that I have initialed." CT 160; *see* 1RT 5.[3] Trial counsel likewise noted that he had "reviewed this form with [his] client and ha[d] explained each of the items in the form . . . ." CT 160. At the plea and sentencing hearings, the judge advised Jones as follows: "You're giving up your rights to writs and appeals."

---

[3] When referring to the reporter's transcript ("RT"), the Court will use the numbers in the lower-right hand corner of the pages, which is consistent with citations to the record by the parties. *See* Resp't Ex. B, Dkts. 7-2 7-3.

9

1    1RT 6.  At that time, neither Jones nor trial counsel raised any question concerning the waiver

2    clauses or suggested there was an ambiguity in them.  1RT 6.

3          As noted above, Jones argued on direct appeal (as he does in the instant action) that the

4    two paragraphs governing the waiver are inconsistent, which therefore renders the plea agreement

5    ambiguous.  Dkt. 1 at 5, 12-22.  Specifically, Jones maintained that the state court should decline

6    to enforce the broader appellate waiver in paragraph No. 14 and reach the merits of his sentencing

7    challenges because ambiguities in plea agreements should be construed in his favor.  *Id.*

8          The state appellate court disagreed that the plea agreement was ambiguous and declined to

9    write paragraph No. 14 out of the agreement.  *See Jones*, 2021 WL 2154614, at *3.  The state

10   appellate court noted that the two paragraphs were redundant.  *Id.*  Both paragraphs "include a

11   waiver of the right to appeal prior orders, a waiver of the right to appeal the conviction, and an

12   agreement not to ask the court to withdraw the plea after it is entered."  *Id.*  The state appellate

13   court pointed out that while it strives "to avoid such redundancies, neither party proposes a

14   reading of the agreement under which paragraph No. 15 is not superfluous."  *Id.*  But it found "that

15   superfluity d[id] not justify reading paragraph No. 14 out of the plea agreement."  *Id.* (citing 11

16   Williston on Contracts (4th ed. 2021) Section 32:1).  The state appellate court concluded that

17   "avoiding redundancy is not possible" but "the existence of superfluity does not render the

18   agreement or any part thereof unenforceable."  *Id.*  This Court finds reasonable the state appellate

19   court's analysis that the aforementioned redundancies did not render the agreement unenforceable.

20   *Id.*

21         Having found reasonable the state appellate court's determination that Paragraph Nos. 14

22   and 15 were merely redundant and not ambiguous, the Court must determine if the state court was

23   reasonable in dismissing the appeal upon concluding that "[Jones]'s claims of error f[e]ll within

24   the scope of the appellate waiver to which he agreed as part of his plea agreement."  *Id.* at *1, 3.

25   In essence, the state court enforced the waiver upon determining that it precluded Jones from

26   appealing his sentence.  *Id.* at *3.  As indicated above, the state appellate court found that Jones

27   had initialed beside both appellate waivers, Paragraph Nos. 14 and 15, and determined that it was

28   "undisputed that [Jones']s claims of sentencing error fall within the scope of the broader appellate

1    waiver in paragraph No. 14 but are outside the scope of the more limited appellate waiver in

2    paragraph No. 15." *Id.* Jones does not rebut this finding of fact with clear and convincing

3    evidence and, thus, it is presumed to be correct. *See* 28 U.S.C. § 2254(e)(1) (federal habeas court

4    must presume correct any determination of a factual issue made by state court unless petitioner

5    rebuts the presumption of correctness by clear and convincing evidence). Therefore, because the

6    record shows that the state appellate court determined that the appellate waivers were enforceable

7    and at least one appellate waiver precluded Jones's direct appeal, the Court finds the state

8    appellate court was reasonable in dismissing the appeal upon finding his appellate rights were

9    waived. Accordingly, the state supreme court's summary denial of Jones's petition for review

10   relating to Claims One and Three was objectively reasonable. *See Plascencia*, 467 F.3d at 1197-

11   98; *Himes*, 336 F.3d at 853. Thus, Jones is not entitled to habeas relief on Claims One and Three,

12   and both claims are **DENIED**.

### B.   Claim Two

In Claim Two, Jones alleges the trial court violated his right to due process by arbitrarily denying his motion to strike a sentence enhancement, stating as follows:

> [Jones's] offenses . . . were committed in a less serious manner than would normally be expected of the crimes, as enhanced under [Cal. Penal Code] § 12022.53[4], for two reasons: First, because the underlying conduct was not sufficiently serious as to have amounted to assault until the Supreme Court expanded the definition of assault in 2001 and second, because at the time of its enhancement § 12022.53 was not intended to apply to the conduct underlying [Jones's] conviction.

Dkt. 1 at 32 (brackets and footnote added). Specifically, Jones claims as follows:

> It was uncontroverted that [Jones] suffered from serious mental illnesses, including post-traumatic stress disorder; the [c]ourt found appellant suffered from lifelong trauma arising from an attack to which he had been subjected as a young man. (2RT 324[.]) However, based on [Jones] having intentionally become intoxicated and having fired a gun, which inadvertently could have cause harm, and that [Jones] had a prior conviction for gross vehicular manslaughter while intoxicated, the court imposed three consecutive sentences for assault with a firearm on a peace officer with

---

[4] Under California Penal Code § 12022.53(b), a person who, in the commission of certain listed felonies, including assault on a peace officer, "personally uses a firearm" is subject to a ten-year sentence enhancement. *See* Cal. Penal Code § 12022.53(b).

11

>>enhancements for personal use of a weapon for a total prison sentence of 26 years, 8 months. (2RT 324-327[.])
>
>The court ordered the sentences run consecutively[] because each assault was committed against a different officer. (2 RT 326[.]) It offered no reason for declining [Jones's] request to strike the personal use enhancements. (CT 215-216[.])

*Id.* at 22-23 (brackets added).

The general rule is that violations of state law are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. *See Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (per curiam) ("a 'mere error of state law' is not a denial of due process"); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). A federal habeas petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process. We accept a state court's interpretation of state law, and alleged errors in the application of state law are not cognizable in federal habeas corpus." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (citations omitted).

Jones's argument that the state courts violated his constitutional due process rights appears to be a roundabout attack on those courts' applications of state law. In alleging such a claim, Jones relies on a general statement in *Hicks v. Oklahoma*, 447 U.S. 343 (1980), that he contends imposes a federal constitutional duty on state courts to comply with state laws. Citing *Hicks*, Jones contends in Claim Two that the trial court "arbitrarily declined to strike" his firearm use enhancements under section 1385 of the California Penal Code,[5] which were imposed under section 12022.53. Dkt. 1 at 5, 23.

Respondent argues that Claim Two should be dismissed "[b]ecause, as the state court concluded . . . , Jones waived his right to appeal and raise such a claim . . . . But even if reviewed de novo, the claim should be rejected. Dkt. 6-1 at 13 (footnote and citation omitted).

Before considering the merits of Claim Two, the Court first turns to the particular issue presented in *Hicks* to understand the limited value of that case for federal habeas petitioners trying to use it as the basis of a due process claim.

---

[5] Further statutory references are to the California Penal Code unless otherwise indicated.

The United States Supreme Court observed in *Hicks* that a failure to follow state law might implicate the criminal defendant's federal right to due process. *See Hicks*, 447 U.S. at 346. In *Hicks*, Oklahoma law provided that a convicted defendant was entitled to have his punishment fixed by the jury. *See id.* at 344-45. Hicks's jury had been instructed, in accordance with a habitual offender statute then in effect, that the jury had to assess the punishment at a mandatory forty years' imprisonment if it found defendant guilty. *See id.* The jury followed the instruction, imposing the mandatory forty-year term when it returned a guilty verdict. *Id.* at 345. Later, the Oklahoma habitual offender statute was declared unconstitutional in a separate case, and that led Hicks to try to set aside his sentence. *Id.* The state appellate court acknowledged the statute was unconstitutional, but still affirmed his conviction and sentence, reasoning that he was not prejudiced by the impact of the invalid statute because "his sentence was within the range of punishment that could have been imposed in any event." *Id.* The United States Supreme Court determined that this analysis was erroneous. *Id.* at 345-46. The Court explained that a convicted defendant was entitled under Oklahoma law to have his punishment fixed by the jury and that, without the unconstitutional statute, the jury could have imposed any sentence of as little as ten years, so it was incorrect to say that the instruction that directed a mandatory forty-year sentence did not prejudice the defendant. *Id.* The Court next rejected the argument that this was only a state law error, stating as follows:

> It is argued that all that is involved in this case is the denial of a procedural right of exclusively state concern. Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of a state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.

*Id.* at 346 (citation omitted).

The *Hicks* rule creates a "liberty interest" only in state statutes that are "unqualified" – that is, laws that impose a mandatory obligation that eliminates any official discretion. *See Clemons v. Mississippi*, 494 U.S. 738, 745-57 (1990); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)

13

("The state statutes in question must do more than merely channel administrative discretion; they must be 'explicitly mandatory.'"). In analyzing a liberty interest claim, the federal courts "first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Cooke*, 562 U.S. at 219. In *Cooke,* where the petitioner attempted to challenge the merits of the state parole board's decision to deny parole, the Supreme Court held that the only constitutionally required procedure was the prisoner's right to be heard and to be provided the reasons why parole was denied, which was satisfied. *Id*. The responsibility for assuring that the procedure was properly applied "rests with California courts, and is no part of the Ninth Circuit's business." *Id.* at 220-21. No Supreme Court opinion supported converting the state rule into a substantive federal requirement, which would "subject to federal-court merits review the application of all state-prescribed procedures in cases involving liberty or property interests, including (of course) those in criminal prosecutions. That has never been the law." *Id.*

Here, this Court has found no California Supreme Court decision concluding that a defendant has a liberty interest in having his sentence reduced under section 1385. Moreover, in considering challenges to other provisions, the Ninth Circuit has repeatedly rejected claims that California laws can be parlayed into federally protected liberty interests. *See, e.g.*, *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 443 (9th Cir. 2007) (no liberty interest in state right to collaterally attack prior conviction used as enhancement in certain circumstances); *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (statutory right to have two attorneys argue capital case); *Harris v. Vasquez*, 949 F.2d 1497, 1522-23 (9th Cir. 1990) (statutory right to effective assistance of mental health expert in capital case). It thus follows that, here, Jones fails to show that he had a liberty interest in the sentencing court striking his section 12022.53 sentence enhancements under section 1385. *See* Dkt. 1 at 23-32. The decision whether to strike an enhancement under section 1385 is in no way mandatory or "unqualified," but instead lies within the broad discretion of the sentencing court. *See People v. Johnson*, 83 Cal. App. 5th 1074, 1092 (2022); *People v. Dryden*, 60 Cal. App. 5th 1007, 1031 (2021); *see also Brothers v. Dowdle*, 817 F.2d 1388, 1390 (9th Cir. 1987) (noting that state sentencing courts have "wide latitude" in their sentencing decisions);

14

*Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987) (same).  Thus, Jones fails to show he has a liberty interest in the outcome of a state court's discretionary decision such as that exercised under Section 1385.

Even if the Court construes Claim Two as Jones claiming was deprived of the "procedure" allowed by Section 1385, such a claim still fails.  Both the defense and prosecution, in their respective sentencing briefs to the trial court, acknowledged that the court had discretion to strike the Section 12022.53 enhancements.  CT 170-72, 210-16.  The plea form similarly noted that Jones might move to strike the enhancements, and trial counsel stated the same during the plea hearing.  CT 158; 1RT 3-4.  The trial court similarly noted during the plea hearing that it could sentence Jones to probation, which could only be achieved by striking the Section 12022.53 enhancements.  1RT 3-6.  At the sentencing hearing itself, the trial court acknowledged it had read the parties' sentencing briefs, and that it had discretion to strike the arming enhancements.  2RT 303.  While the sentencing court did not expressly explain why it declined to strike Jones's sentence enhancements, there is no requirement that it do so, and the court gave a lengthy explanation for the sentence it imposed.  *See* 2RT 323-26.  In sum, the sentencing court was aware of its discretion to strike the sentence enhancements under Section 1385, and in an exercise of that discretion, decided not to strike the enhancements.  Thus, the state supreme court could have reasonably rejected this claim upon finding that Jones was not deprived of the procedure, or opportunity, for the sentencing court to exercise its discretion whether to strike his sentence enhancements under Section 1385, even assuming, arguendo, Jones had a liberty interest in that procedure.

Therefore, the state supreme court's summary denial of Jones's petition for review relating to Claim Two was objectively reasonable.  *See Plascencia*, 467 F.3d at 1197-98; *Himes*, 336 F.3d at 853.  Accordingly, Jones is not entitled to habeas relief on Claim Two, and it is **DENIED**.

## VI.  CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case.  For the reasons set out above, jurists of reason would not find the Court's denial of Jones's claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Jones may not appeal the denial of a Certificate of

15

Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing § 2254 Cases.

**VII. CONCLUSION**

For the reasons outlined above, the Court orders as follows:

1. The petition for writ of habeas corpus is **DENIED** as to all claims.

2. A certificate of appealability will not issue. Jones may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

3. The Clerk of the Court shall terminate any pending motions and close the file.

**IT IS SO ORDERED.**

Dated: December 27, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

16